UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------
MARIO J. HERNANDEZ, JOSE MILTON APARICIO,
FIDENCIO ORELLANA DIAZ, DIEGO LACERDA,
FRANCISCO LOPEZ, ASSIS RODRIGUEZ,
VRADIMIR A. GUZMAN, RAMON BASURTO,
GUILLERMO A. SANCHEZ, WALNEY SILVA,          Docket No.: 17-cv-09375
BRANDON HEMMEN, JEFFERSON BASTOS,            (LJL) (BCM)
and VICTOR CHILA LOPEZ on behalf of themselves
and all others similarly situated,

                        Plaintiffs,

              -against-

BMNY CONTRACTING CORP., BMNY
CONSTRUCTION CORP., BENEDETTO CUPO,
and EASTLAND SERVICES CORP.,

                        Defendants.
-----------------------------------------------------------------------

**[PROPOSED] FINDINGS OF FACT AND CONSLUSIONS OF LAW**

        This Court, having entered a default judgment against Defendants BMNY Contracting

Corp., BMNY Construction Corp., Benedetto Cupo, and Eastland Services Corp. ("Defendants"),

D.E. 122, and having conducted an inquest in this matter regarding the assessment of damages,

the Court now makes the following findings of fact and conclusions of law:

**[PROPOSED] FINDINGS OF FACT**

        1.      Defendants BMNY Contracting Corp., BMNY Construction Corp., Eastland

Services Corp. and Benedetto Cupo employed the Plaintiffs as a non-exempt hourly paid

employees, in the positions as laborers. Exhibit E;[1] Exhibit M at ¶ 4; Exhibit P at ¶ 4; Exhibit T at

_____

[1] "Exhibits" refer to the exhibits annexed to the Declaration of David D. Barnhorn, Esq. in Support of Plaintiffs'
Inquest Memorandum Seeking a Default Judgment.

¶ 4; Exhibit X at ¶ 4; Exhibit AB at ¶ 4; Exhibit AD at ¶ 4; Exhibit AH at ¶ 4; Exhibit AK at ¶ 4; Exhibit AO at ¶ 4; Exhibit AR at ¶ 4; Exhibit AV at ¶ 4; Exhibit AX at ¶ 4; Exhibit AZ at ¶ 4.

2.      Defendant BMNY Contracting Corp. employed Plaintiffs Hernandez, Aparicio, Diaz, Lacerda, Lopez, Rodriguez, Guzman, Basurto, Sanchez, Silva, Hemmen, Bastos and Chila Lopez. Exhibit E; Exhibit M at ¶ 4; Exhibit P at ¶ 4; Exhibit T at ¶ 4; Exhibit X at ¶ 4; Exhibit AB at ¶ 4; Exhibit AD at ¶ 4; Exhibit AH at ¶ 4; Exhibit AK at ¶ 4; Exhibit AO at ¶ 4; Exhibit AR at ¶ 4; Exhibit AV at ¶ 4; Exhibit AX at ¶ 4; Exhibit AZ at ¶ 4.

3.      Defendant BMNY Construction Corp. employed Plaintiffs Hernandez, Aparicio, Diaz, Lacerda, Lopez, Rodriguez, Guzman, Basurto, Sanchez, Silva, Hemmen, Bastos and Chila Lopez. Exhibit E; Exhibit M at ¶ 4; Exhibit P at ¶ 4; Exhibit T at ¶ 4; Exhibit X at ¶ 4; Exhibit AB at ¶ 4; Exhibit AD at ¶ 4; Exhibit AH at ¶ 4; Exhibit AK at ¶ 4; Exhibit AO at ¶ 4; Exhibit AR at ¶ 4; Exhibit AV at ¶ 4; Exhibit AX at ¶ 4; Exhibit AZ at ¶ 4.

4.      Defendant Benedetto Cupo employed Plaintiffs Hernandez, Aparicio, Diaz, Lacerda, Lopez, Rodriguez, Guzman, Basurto, Sanchez, Silva, Hemmen, Bastos and Chila Lopez. Exhibit E; Exhibit M at ¶ 4; Exhibit P at ¶ 4; Exhibit T at ¶ 4; Exhibit X at ¶ 4; Exhibit AB at ¶ 4; Exhibit AD at ¶ 4; Exhibit AH at ¶ 4; Exhibit AK at ¶ 4; Exhibit AO at ¶ 4; Exhibit AR at ¶ 4; Exhibit AV at ¶ 4; Exhibit AX at ¶ 4; Exhibit AZ at ¶ 4.

5.      Defendant Eastland Services Corp. employed Plaintiffs Hernandez, Guzman, Basurto, Sanchez, and Silva. Exhibit E; Exhibit M at ¶ 4; Exhibit AH at ¶ 4; Exhibit AK at ¶ 4; Exhibit AO at ¶ 4; Exhibit AR at ¶ 4.

6.      However, throughout Plaintiffs' employment, Defendants BMNY Contracting Corp., BMNY Construction Corp., and Eastland Services Corp. each were successive versions operating as the same business.  Exhibit E; Exhibit M at ¶¶ 5-22; Exhibit P at ¶¶ 5-9; Exhibit T at

¶¶ 5-9; Exhibit X at ¶¶ 5-9; Exhibit AB at ¶¶ 5-9; Exhibit AD at ¶¶ 5-9; Exhibit AH at ¶¶ 5-22; Exhibit AK at ¶¶ 5-23; Exhibit AO at ¶¶ 5-24; Exhibit AR at ¶¶ 5-24; Exhibit AV at ¶¶ 5-9; Exhibit AX at ¶¶ 5-9; Exhibit AZ at ¶¶ 5-9.

7.    Each of these businesses, in their successive iterations, operated from and had the same principle place of business at 260 Madison Avenue, 8th Floor, New York, New York 10016, were solely owned by Defendant Benedetto Cupo, Defendant Benedetto Cupo oversaw the day-to-day operations of these entities in the same manner, employed the same individuals – or similar individuals due to normal employee turnover – for their management and supervisory team, employed many of the same individuals – or similar individuals due to normal employee turnover – for their employees and staff, including Plaintiffs, their employees performed substantially identical jobs with identical duties and under substantially the same working conditions, performed substantially identical work and services and did so for the same or substantially similar clientele, operated under the same general business operations and business model, utilized all of the same employment and compensation practices, paid Plaintiffs and other similarly situated employees in the same manner, used the same payroll company to process its payroll, and utilized all of the same equipment, and machinery, tools, and methods of production to provide their services to their clients. Exhibit E; Exhibit M at ¶¶ 5-22; Exhibit P at ¶¶ 5-9; Exhibit T at ¶¶ 5-9; Exhibit X at ¶¶ 5-9; Exhibit AB at ¶¶ 5-9; Exhibit AD at ¶¶ 5-9; Exhibit AH at ¶¶ 5-22; Exhibit AK at ¶¶ 5-23; Exhibit AO at ¶¶ 5-24; Exhibit AR at ¶¶ 5-24; Exhibit AV at ¶¶ 5-9; Exhibit AX at ¶¶ 5-9; Exhibit AZ at ¶¶ 5-9.

8.    Thus, BMNY Contracting Corp., BMNY Construction Corp., and Eastland Services Corp. are identical corporations in all respects other than utilizing a new corporate name. Exhibit E; Exhibit M at ¶¶ 5-22; Exhibit P at ¶¶ 5-9; Exhibit T at ¶¶ 5-9; Exhibit X at ¶¶ 5-9;

Exhibit AB at ¶¶ 5-9; Exhibit AD at ¶¶ 5-9; Exhibit AH at ¶¶ 5-22; Exhibit AK at ¶¶ 5-23; Exhibit AO at ¶¶ 5-24; Exhibit AR at ¶¶ 5-24; Exhibit AV at ¶¶ 5-9; Exhibit AX at ¶¶ 5-9; Exhibit AZ at ¶¶ 5-9.

9.      Additionally, at all relevant times, Defendant Benedetto Cupo, in addition to the corporate Defendants, was responsible for the payment of wages to employees, including Plaintiffs, and determining what wages were paid to employees, including Plaintiffs, scheduling and hours worked, hiring, firing and disciplining employees and approving all personnel decisions, and was responsible for maintaining personnel records relating to employees, including Plaintiffs' employment. Exhibit E; Exhibit M at ¶ 23; Exhibit P at ¶ 10; Exhibit T at ¶ 10; Exhibit X at ¶ 10; Exhibit AB at ¶ 10; Exhibit AD at ¶ 10; Exhibit AH at ¶ 23; Exhibit AK at ¶ 24; Exhibit AO at ¶ 25; Exhibit AR at ¶ 25; Exhibit AV at ¶ 10; Exhibit AX at ¶ 10; Exhibit AZ at ¶ 10.

10.     Defendants had control over the conditions of Plaintiffs' employment, work schedule, the rates and methods of payment of their wages and the maintenance of their employment records. Exhibit E; Exhibit M at ¶ 31; Exhibit P at ¶ 16; Exhibit T at ¶ 17; Exhibit X at ¶ 16; Exhibit AB at ¶ 17; Exhibit AD at ¶ 16; Exhibit AH at ¶ 30; Exhibit AK at ¶ 30; Exhibit AO at ¶ 32; Exhibit AR at ¶ 32; Exhibit AV at ¶ 17; Exhibit AX at ¶ 16; Exhibit AZ at ¶ 17.

11.     Throughout their employment, Plaintiffs regularly worked, and were required to work, more than forty hours in a workweek. Exhibit E; Exhibit M at ¶¶ 24-28; Exhibit P at ¶¶ 11-13; Exhibit T at ¶¶ 11-14; Exhibit X at ¶¶ 11-14; Exhibit AB at ¶ 11-14; Exhibit AD at ¶¶ 11-14; Exhibit AH at ¶¶ 24-27; Exhibit AK at ¶¶ 25-27; Exhibit AO at ¶ 26-29; Exhibit AR at ¶¶ 26-29, Exhibit AV at ¶¶ 11-13; Exhibit AX at ¶¶ 11-13; Exhibit AZ at ¶¶ 11-14.

12.     However, throughout their employment, despite working more than forty hours per week, Defendants paid Plaintiffs at their regular rates of pay for their hours worked, including the

hours worked by Plaintiffs in excess of forty hours. Exhibit E; Exhibit M at ¶ 29; Exhibit P at ¶ 14; Exhibit T at ¶ 15; Exhibit X at ¶ 15; Exhibit AB at ¶ 15; Exhibit AD at ¶ 15; Exhibit AH at ¶ 28; Exhibit AK at ¶ 28; Exhibit AO at ¶ 30; Exhibit AR at ¶ 30; Exhibit AV at ¶ 14 Exhibit AX at ¶ 14; Exhibit AZ at ¶ 15.

13.    As a result, Defendants failed to pay Plaintiffs premium overtime compensation at the rate of one and one-half times their regular hourly rate of pay for the hours that Plaintiffs worked after forty hours per week. Exhibit E; Exhibit M at ¶ 29; Exhibit P at ¶ 14; Exhibit T at ¶ 15; Exhibit X at ¶ 15; Exhibit AB at ¶ 15; Exhibit AD at ¶ 15; Exhibit AH at ¶ 28; Exhibit AK at ¶ 28; Exhibit AO at ¶ 30; Exhibit AR at ¶ 30; Exhibit AV at ¶ 14; Exhibit AX at ¶ 14; Exhibit AZ at ¶ 15.

14.    Moreover, throughout their employment, Defendants commonly failed to pay Plaintiffs Hernandez, Aparicio, Diaz, Lopez, Guzman; Basurto, Lacerda, Rodriguez, Sanchez, Silva, Hemmen, Bastos, and Chila Lopez even at their straight-time rate for certain hours worked. Exhibit E; Exhibit M at ¶¶ 26, 30; Exhibit P at ¶¶ 12, 15; Exhibit T at ¶¶ 12, 16; Exhibit X at ¶ 12; Exhibit AB at ¶¶ 12, 16; Exhibit AD at ¶ 12; Exhibit AH at ¶¶ 25, 29; Exhibit AK at ¶ 29; Exhibit AO at ¶¶ 28, 31; Exhibit AR at ¶¶ 27, 31, Exhibit AV at ¶ 15; Exhibit AX at ¶¶ 12, 15; Exhibit AZ at ¶¶ 12, 16.

15.    Indeed, during many weeks of their employment, Defendants omitted several hours of work performed by these Plaintiffs from their paychecks, thereby failing to pay Plaintiffs at any rate of pay for those hours worked. Exhibit E; Exhibit M at ¶ 30; Exhibit P at ¶ 15; Exhibit T at ¶ 16; Exhibit X at ¶ 12; Exhibit AB at ¶ 16; Exhibit AH at ¶ 29; Exhibit AK at ¶ 29; Exhibit AO at ¶ 31; Exhibit AR at ¶ 31; Exhibit AV at ¶ 15; Exhibit AX at ¶ 15; Exhibit AZ at ¶ 16.

16.     Defendants failed to pay Plaintiff Hemmen any compensation for any of his hours worked during two workweeks during his employment. Exhibit AV at ¶ 16.

17.     Defendants failed to pay Plaintiffs and persons similarly situated to Plaintiffs a premium for time worked in excess of forty hours per week. Exhibit E; Exhibit M at ¶ 33; ; Exhibit P at ¶ 18; Exhibit T at ¶ 19; Exhibit X at ¶ 18; Exhibit AB at ¶ 19; Exhibit AD at ¶ 18; Exhibit AH at ¶ 32; Exhibit AK at ¶ 32; Exhibit AO at ¶ 34; Exhibit AR at ¶ 34; Exhibit AV at ¶ 19; Exhibit AX at ¶ 18; Exhibit AZ at ¶ 19.

18.     Additionally, Defendants repeatedly issued Plaintiffs Hernandez, Aparicio, Diaz, Lacerda, Lopez, Guzman, Basurto, Sanchez, Bastos, and Chila Lopez paychecks for work performed that were returned for insufficient funds. Exhibit E; Exhibit M at ¶ 34; Exhibit P at ¶ 19; Exhibit T at ¶ 20, Exhibit X at ¶ 19; Exhibit AB at ¶ 20; Exhibit AD at ¶ 19; Exhibit AH at ¶ 33-34; Exhibit AK at ¶ 33; Exhibit AO at ¶ 35; Exhibit AR at ¶ 35; Exhibit AX at ¶ 19; Exhibit AZ at ¶ 20.

19.     As a result, Defendants delayed making payments to these Plaintiffs by failing to issue valid paychecks on a regular basis and by issuing checks that were returned for insufficient funds in violation of the Fair Labor Standards Act's prompt payment requirement, 29 U.S.C. § 206(a) and failed to pay employees in accordance with their agreed terms of employment in violation of New York Labor Law § 191(1)(d). Exhibit E; Exhibit M at ¶ 35; Exhibit P at ¶ 20; Exhibit T at ¶ 21; Exhibit X at ¶ 20; Exhibit AB at ¶ 21; Exhibit AD at ¶ 20; Exhibit AH at ¶ 34-35; Exhibit AK at ¶ 34; Exhibit AO at ¶ 36; Exhibit AR at ¶ 36; Exhibit AX at ¶ 20; Exhibit AZ at ¶ 21.

20.     Defendants failed to provide Plaintiffs (except Diaz and Lopez) with written notice upon their hire of their rates of pay and other information as required by NYLL § 195(1). Exhibit

E; Exhibit M at ¶ 36; Exhibit P at ¶ 21; Exhibit X at ¶ 21; Exhibit AD at ¶ 21; Exhibit AH at ¶ 36;

Exhibit AK at ¶ 35; Exhibit AO at ¶ 37; Exhibit AR at ¶ 37; Exhibit AV at ¶ 20; Exhibit AX at ¶

21; Exhibit AZ at ¶ 22.

     21.    Throughout their employment, Defendants failed to provide Plaintiffs with wage

statements stating accurate information, as they did not include the correct number of regular and

overtime hours worked, overtime rate of pay, gross pay, net pay and deductions, as required by

NYLL § 195(3). Exhibit E; Exhibit M at ¶ 37; Exhibit P at ¶ 22; Exhibit T at ¶ 22; Exhibit X at ¶

22; Exhibit AB at ¶ 22; Exhibit AD at ¶ 22; Exhibit AH at ¶ 37; Exhibit AK at ¶ 36; Exhibit AO

at ¶ 38; Exhibit AR at ¶ 38; Exhibit AV at ¶ 22; Exhibit AX at ¶ 22; Exhibit AZ at ¶ 23.

     22.    Defendants willfully disregarded and purposefully evaded record keeping

requirements of the FLSA by failing to maintain accurate records of the hours worked by Plaintiffs

and wages paid to Plaintiffs and other similarly situated employees. Exhibit E; Exhibit M at ¶ 32;

Exhibit P at ¶ 17; Exhibit T at ¶ 18; Exhibit X at ¶ 17; Exhibit AB at ¶ 18; Exhibit AD at ¶ 17;

Exhibit AH at ¶ 31; Exhibit AK at ¶ 31; Exhibit AO at ¶ 33; Exhibit AR at ¶ 33; Exhibit AV at ¶

18; Exhibit AX at ¶ 17; Exhibit AZ at ¶ 18.

     23.    At all relevant times, Defendants failed to post notices explaining applicable wage

and hour requirements in conspicuous places as required by the Fair Labor Standards Act, 29

C.F.R. § 516.4 and the New York Labor Law, N.Y. Comp. Codes R. & Regs. 12 § 146-2.4. Exhibit

E; Exhibit M at ¶ 38;  Exhibit P at ¶ 23; Exhibit T at ¶ 23; Exhibit X at ¶ 23; Exhibit AB at ¶ 23;

Exhibit AD at ¶ 23; Exhibit AH at ¶ 38; Exhibit AK at ¶ 37; Exhibit AO at ¶ 39; Exhibit AR at ¶

39; Exhibit AV at ¶ 22; Exhibit AX at ¶ 23; Exhibit AZ at ¶ 24.

## [PROPOSED] CONCLUSIONS OF LAW

## I.      THE DISTRICT COURT PROPERLY ENTERED A DEFAULT JUDGMENT

"Federal Rule of Civil Procedure ("Rule") 55 governs judgments against a party that has failed to plead or otherwise defend in the action." Gesualdi v. Pecgro Trucking, Inc., 2015 WL 5608149, at *2 (E.D.N.Y. Aug. 13, 2015) (citing Fed. R. Civ. P. 55(a)); Fed. R. Civ. P. 55(b)(2). Where a plaintiff demonstrates that a defendant has defaulted, the "default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages." Gesualdi, 2015 WL 5608149, at *3 (citing Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010)); Calle v. Yoneles Enter., Inc., 2017 WL 6942652, at *5 (E.D.N.Y. Oct. 24, 2017), rep. and rec. adopted, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); and Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)) ("Ordinarily, where, as here, a defendant fails to respond to the complaint and defaults, any well-pleaded factual allegation contained within the complaint, other than those relating to damages, are deemed to be admitted."). However, "[w]ith respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to establish that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Gesualdi, 2015 WL 5608149, at *3 (citing Liberty Mut. Ins. Co. v. Fast Lane Car Serv., 681 F. Supp. 2d 340, 346 (E.D.N.Y. 2010)); Calle, 2017 WL 6942652, at *5 (quoting Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)) ("Even if liability has been established, the pleading's allegations concerning damages are not deemed to be admitted by the default; instead, the court must conduct 'an inquiry in order to ascertain the amount of damages with reasonable certainty.'").

As a corporate defendant, Defendant BMNY Construction Corp. is required to appear in this action through an attorney and the failure to do so constitutes a default. See Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006) (quoting SEC v. Research Automation Corp., 521 F.2d 585 (2d Cir. 1975); and citing Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565, 568 (2d Cir. 2000) and Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991)) (noting "[i]t is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55, F[ed]. R. Civ. P."); SEC v. Pentagon Capital Mgmt. PLC, 2012 WL 3065981, at *4 (S.D.N.Y. July 25, 2012) (citing Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983)) ("It is well-established that a corporation cannot represent itself in a civil action.").

Here, Plaintiffs properly served Defendant BMNY Contracting Corp. with the Second Amended Complaint.  On September 8, 2020, Plaintiffs effectuated service on BMNY Contracting Corp. with both the Amended Summons and Second Amended Complaint via the New York Secretary of State pursuant to Fed. R. Civ. P. 4(e)(1), (h)(1); CPLR 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1). Exhibit F.  Having been properly served, Plaintiffs are entitled to a default judgment and damages against Defendant BMNY Contracting Corp. as it has failed to Answer or otherwise move with respect to the Second Amended Complaint.

Plaintiffs properly served Defendant Eastland Service Corp. with the Second Amended Complaint.  On September 9, 2020, Plaintiffs effectuated service on Eastland Service Corp. with both the Amended Summons and Second Amended Complaint via the New York Secretary of State pursuant to Fed. R. Civ. P. 4(e)(1), (h)(1); CPLR 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1). Exhibit H.  Having been properly served, Plaintiffs are entitled to a default judgment and damages

against Defendant Eastland Service Corp. as it has failed to Answer or otherwise move with respect to the Second Amended Complaint.

Plaintiffs properly served Defendant Cupo with the Second Amended Complaint.  On September 16, 2020, Plaintiffs effectuated service of the Amended Summons and Second Amended Complaint on Defendant Cupo through a person of suitable age and discretion at Defendant Cupo's dwelling house and with a second copy by mail pursuant to Fed. R. Civ. P. 4(e)(1), (2)(B) and CPLR 308(2). Exhibit G.  Having been properly served, Plaintiffs are entitled to a default judgment and damages against Defendant Cupo as he has failed to Answer or otherwise move with respect to the Second Amended Complaint.

Plaintiffs properly served Defendant BMNY Construction Corp. with the Second Amended Complaint.  On August 20, 2020, Plaintiffs filed their Second Amended Complaint.  At that time, BMNY Construction Corp. was represented by counsel and then-counsel had entered an appearance to receive CM/ECF bounces.  As such, Defendant BMNY Construction Corp. received service of the Second Amended Complaint via CM/ECF as a participating party.  Having been properly served, Plaintiffs are entitled to a default judgment against Defendant BMNY Construction Corp. as it has failed to Answer or otherwise move with respect to the Second Amended Complaint.

Additionally, on November 24, 2010, then-counsel for Defendant BMNY Construction Corp. submitted a letter indicating that Defendant BMNY Construction Corp. did not intend to defend this action further and requested leave to withdraw as counsel of record. D.E. 93.  On November 25, 2020, then-counsel for Defendant BMNY Construction Corp. was granted leave to withdraw. D.E. 96.  In that order, the Court directed Defendant BMNY Construction Corp. that it could not represent itself in this litigation and must appear through counsel, while affording

Defendants thirty days to appear via new counsel. Id.  Since that order, Defendant BMNY Construction Corp. has failed to appear through an attorney and it is in default.

Additionally, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 as several of Plaintiffs' claims arise under federal law.  The Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 as those claims are sufficiently related to the federal claims as to constitute part of the same case or controversy.

Accordingly, as all Defendants are in default, Plaintiffs' well-pleaded allegations, which must be accepted as true against all Defendants due to the Defendants' defaults, establish its liability on each of Plaintiffs' claims under the FLSA, NYLL and under New York common law. D.E. 122.

### A.    **Plaintiffs have Established Defendants' Liability**

#### i.    *Plaintiffs' Claims Are Timely*

"The statute of limitations for an FLSA claim is two years, unless the violation is willful, in which case it is three years." See Kuebel v. Black & Decker, Inc., 643 F.3d 352, 366 (2d Cir. 2011) (citing 29 U.S.C. § 255(a)); Romero v. Floris Constr., Inc., 2017 WL 5592681, at *4 (E.D.N.Y. Nov. 20, 2017) (citing Kuebel, 643 F.3d at 366); 29 U.S.C. § 255(a).  "Employers are considered to have willfully violated the FLSA if they 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the FLSA." Romero, 2017 WL 5592681, at *4 (quoting Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009)).  Unlike the FLSA, the NYLL contains a six-year statute of limitations. See Romero, 2017 WL 5592681, at *4 (citing Wicaksono v. XYZ 48 Corp., 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011)); Calle, 2017 WL 6942652, at *8 (citing NYLL §§ 198(3), 663(3)).  Additionally, claims under New York common law for unjust enrichment and quantum meruit are subject to a six-year statute of

limitations. <u>Demian v. Calmenson</u>, 66 N.Y.S.3d 462, 463 (1st Dep't 2017) (unjust enrichment or quantum meruit); <u>Williams-Guillaume v. Bank of Am., N.A.</u>, 14 N.Y.S.3d 466, 469 (2d Dep't 2015) (unjust enrichment); <u>Maya NY, LLC v. Hagler</u>, 965 N.Y.S.2d 475, 477 (1st Dep't 2013) (unjust enrichment).

Plaintiffs have established Defendants' failure to pay them overtime compensation and timely compensation due under the NYLL was willful based on their numerous allegations in the Second Amended Complaint and Plaintiffs' declarations that Defendants willfully violated the FLSA and NYLL and also based on Defendants' failure to properly appear in this action. <u>See</u> <u>Romero</u>, 2017 WL 5592681, at *4 (citing <u>Coley v. Vannguard Urban Improvement Ass'n, Inc.</u>, 2016 WL 4179942, at *3 (E.D.N.Y. Aug. 5, 2016); and <u>Herrera v. Tri-State Kitchen & Bath, Inc.</u>, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015)) ("on a default judgment, as with other unrebutted assertions, allegations of willful violations of the FLSA are sufficient to establish willfulness"); <u>Herrera</u>, 2015 WL 1529653, at *6 ("Generally, courts have found that a defendant's default establishes willfulness").  Defendants have also been the subject of multiple lawsuits for substantially similar allegations spanning several years, in addition to this lawsuit, without correcting their pay practices.[2]  Moreover, because Plaintiffs have established Defendants' overtime violations were willful, the FLSA's three-year statute of limitations is applicable. Accordingly, based on the NYLL's six-year statute of limitations, Plaintiffs can recover damages within the statutory period from November 30, 2011 through the end of their employment.

---

[2] Defendants Cupo is being sued for similar FLSA and NYLL violations in *Rivera v. Eastland Assoc. Corp and Benedetto Corp.*, Docket No. 22-cv-00707 (PAE) (KHP) (SDNY).  Defendants BMNY Contracting Corp., Eastland Services Corp., and Cupo are being sued for similar NYLL violations in the matter of *Bermudez v. BMNY Contracting Corp., Eastland Services Corp., and Benedetto Cupo*, Index No. 150742/2021 (Sup. Ct. N.Y. Cnty.).

> ii.    *Defendants BMNY Contracting Corp., BMNY Construction Corp., and Eastland Services Corp. are Subject to Enterprise Coverage under the FLSA and are Covered Employers under the NYLL*

With respect to the corporate Defendants, "[a] plaintiff in a FLSA case must establish either enterprise or individual coverage. 'Enterprise liability under the FLSA extends to entities that (1) perform related activities 'for a common business purpose'; (2) have employees engaged in commerce or in the production of goods for commerce, or…employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (3) have an annual gross volume of sales made or business done [] not less than $500,000.00." Romero, 2017 WL 5592681, at *1 n.1, 5 (citations omitted); 29 U.S.C. § 203(s)(1)(ii).    Here, Plaintiffs have sufficiently established through their Second Amended Complaint and their declarations that Defendants BMNY Contracting Corp., BMNY Construction Corp., and Eastland Services Corp. were enterprises engaged in interstate commerce within the meaning of the FLSA based on their allegations that the Defendant BMNY Contracting Corp., BMNY Construction Corp., and Eastland Services Corp. were engaged in interstate commerce, that Defendants' employees, including Plaintiffs, handled goods, equipment and other materials, including building materials and tools, many of which originated in states other than New York, and had an annual gross volume of sales of at least $500,000.00. Romero, 2017 WL 5592681, at *1 n.1, 5 (citing 29 U.S.C. § 203(s)(1)(ii)); Bendo v. Bautista, 2017 WL 417854, at *4 (E.D.N.Y. Aug. 30, 2017) (inferring New York physical therapy practice possessed requisite connection to interstate commerce because it was "inconceivable that none of the medical or office supplies used…originated outside of New York."). Accordingly, Plaintiffs have established FLSA enterprise coverage with respect to BMNY Contracting Corp., BMNY Construction Corp., and Eastland Services Corp. Defendants BMNY Contracting Corp., BMNY Construction Corp., and Eastland Services Corp. also constitute employers under the NYLL. NYLL § 190(3).

### iii.    *Defendant Cupo was Plaintiffs' Employer under the FLSA and NYLL*

Plaintiffs have established that Defendant Cupo was their employer for purposes of the FLSA and NYLL by alleging that Defendant Cupo owned and operated the Corporate Defendants, had authority to make payroll and personnel decisions for employees of the Corporate Defendants, including Plaintiffs, as he was responsible for tasks such as scheduling and hours worked, hiring, firing and discipling employees, and approving personnel decisions, was active in the day to day management of the Corporate Defendants, including the payment of wages to Plaintiffs and determining what wages were paid to Plaintiffs, and was responsible for the maintenance of his employment records. See Romero, 2017 WL 5592681, at *5 (citing Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 35 (E.D.N.Y. 2015); and Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 139 (2d. Cir. 1999)) (In determining whether an employer-employee relationship exists under FLSA, courts weigh the "totality of the circumstances" and consider whether the employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records" and noting "no one factor is dispositive" and that "Corporate officers with operational control over employees and the corporation itself both fit the definition of 'employer' under the FLSA and the NYLL"); Herman, 172 F.3d at 139; Yu Ling Shen v. Xue Mei Chen, 2018 WL 2122819, at *3 (S.D.N.Y. May 8, 2018) (quoting Herman, 172 F.3d at 139; and 29 U.S.C. § 203(d)) ("The central question in determining whether a person or entity is an employer under the FLSA is 'whether the alleged employer possessed the power to control the workers in question...with an eye to the 'economic reality' presented by the facts of each case'" and "The FLSA defines an employer as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'"); Fermin, 93 F. Supp. 3d at 35 (quoting 29 U.S.C. § 203(d)) ("The FLSA defines the term 'employer' to

include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'"). The determination of whether a person is an employer is essentially the same under the FLSA and NYLL. Yu Ling Shen, 2018 WL 2122819, at *3 (citing Franco v. Jubilee First Avenue Corp., 2016 WL 4487788, at *5 (S.D.N.Y. Aug. 25, 2016); Racquer v. Cafe Buon Gusto Corp., 2012 WL 4494882, at *3 (S.D.N.Y. Sept. 28, 2012); and Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 254 n.48 (S.D.N.Y. 2008)). Accordingly, Plaintiffs have established that Defendant Cupo is an employer liable under the FLSA and NYLL.

### iv. Defendants are all Jointly Liable for Defendants' Violations under the FLSA and NYLL

In an FLSA and NYLL action, Defendants are jointly and severally liable for damages awarded. See Lopez Vasquez v. Lahori Kebab & Grill Corp., 2019 WL 4396724, at *4 (E.D.N.Y. Aug. 13, 2019), report and recommendation adopted sub nom. Vasquez v. Lahori Kebab & Grill Corp., 2019 WL 4620922 (E.D.N.Y. Sept. 5, 2019) (citing Shim v. Millennium Grp., LLC, 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010)) (individual and corporate defendants may be held jointly and severally liable under FLSA); Cavalotti v. Daddyo's BBQ, Inc., 2018 WL 5456654, at *11 (E.D.N.Y. Sept. 8, 2018) (collecting cases) (finding individual and corporate defendants "jointly and severally liable under the FLSA and the NYLL for any FLSA and NYLL damages award made in Plaintiff's favor); Rivera v. Harvest Bakery Inc., 2018 WL 4214337, at *7 (E.D.N.Y. Aug. 17, 2018), rep. and rec. adopted, 2018 WL 4211301 (E.D.N.Y. Sept. 4, 2018) (same). Here, Plaintiffs each allege that they worked directly for several of or, in some cases, all of the Defendants over the course of their employment. As a result, it is appropriate to award damages against Defendants who employed Plaintiffs jointly and severally as Defendants are each independently liable for the damages awarded.

Additionally, the corporate Defendants are also jointly and severally liable for the damages

of all the other corporate defendants' violations under the FLSA and NYLL, even if they did not directly employ a particular Plaintiff. The corporate defendants in this action are a series of successive entities constituting a single business, all of which were owned and operated by Defendant Cupo. Where a new entity is substantially similar in business operations to a prior entity, it may be held liable under the "substantial continuity" doctrine. Patino v. Brady Parking, Inc., 2017 WL 5198192 at *9-10 (S.D.N.Y. Oct. 31, 2017); Wang v. Abumi Sushi Inc., 262 F. Supp. 3d 81, 88-90 (S.D.N.Y. 2017); Bautista v. Beyond Thai Kitchen, Inc., 2015 WL 5459737, at *3-4 (S.D.N.Y. Sept. 17, 2015); Grant v. Her Imports NY, LLC, 2018 WL 3133454, at *16-17 (E.D.N.Y. Feb. 16, 2018) (citing Bautista, 2015 WL 5459737, at *3-4) ("To determine whether one entity is a 'substantial continuity' of another entity often turns on facts that occur after the putative employee's employment ends. For example, in Bautista, even though plaintiff never worked for the defendant, defendant was found to be in substantial continuity with plaintiff's employer because defendant acquired the restaurant after plaintiff stopped working, but continued to run and manage the restaurant in the same manner and offered the same menu. The 'substantial continuity' test aims to protect employees from employers who violate the FLSA and attempt to escape liability…" even through subsequent conduct and noting plaintiff can be entitled to damages from new entity even where predecessor entity that employed the plaintiff defaulted in an action).

Here, Plaintiffs allege that Defendants BMNY Contracting Corp., BMNY Construction Corp., and Eastland Services Corp. each were successive versions operating as the same business. Each of these businesses, in their successive iterations, operated from and had the same principle place of business at 260 Madison Avenue, 8th Floor, New York, New York 10016, were solely owned by Defendant Benedetto Cupo, Defendant Benedetto Cupo oversaw the day-to-day

operations of these entities in the same manner, employed the same individuals – or similar individuals due to normal employee turnover – for their management and supervisory team, employed many of the same individuals – or similar individuals due to normal employee turnover – for their employees and staff, their employees performed substantially identical jobs with identical duties and under substantially the same working conditions, performed substantially identical work and services and did so for the same or substantially similar clientele, operated under the same general business operations and business model, utilized all of the same employment and compensation practices, paid Plaintiffs and other similarly situated employees in the same manner, used the same payroll company to process its payroll, and utilized all of the same equipment, and machinery, tools, and methods of production to provide their services to their clients. As a result, Plaintiffs contend that Defendants BMNY Contracting Corp., BMNY Construction Corp., and Eastland Services Corp. are identical corporations in all respects other than utilizing new corporate names. Moreover, Defendant Cupo's repeated changes of the formal corporate entities while continuing to operate the same business each time appears to be an obvious attempt to avoid liability for Defendants' years of willful violations of the FLSA and NYLL. As an example, Defendant Eastland Services Corp., which is owned and operated by Defendant Cupo, clearly had notice of this lawsuit at the time of the change from the BMNY Contracting Corp. to Eastland Services Corp. Paychecks issued by Eastland Services Corp. continued to refer to BMNY Contracting Corp. Exhibit AI. Thus, Defendants' conduct is sufficient to satisfy the substantial continuity doctrine factors and to impute liability to all corporate defendants for all Plaintiffs. Plaintiffs' allegations and documentary evidence satisfy both the requirements of and the spirit of the intended protections from the substantial continuity doctrine. Moreover, by holding all corporate defendants jointly and severally liable under the substantial continuity doctrine, the

Plaintiffs are likely to have an avenue for recovery for the Plaintiffs who, absent application of the substantial continuity doctrine, may not be able to obtain any relief for years of unlawful wage violations by the Defendants.

> v.    *Defendants Violated the Overtime Provisions of the FLSA and NYLL*

The FLSA and NYLL both require employers to pay their employees for time worked in excess of forty hours per week at a rate of at least one and one-half times the employee's regular rate of pay or the minimum wage, whichever is greater. See Romero, 2017 WL 5592681, at *6 (citing 29 U.S.C. § 207(a)); 29 U.S.C. § 207(a); Piedra v. Ecua Rest., Inc., 2018 WL 1136039, at *12 (E.D.N.Y. Jan. 31, 2018), rep. and rec. adopted, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018); 12 NYCRR § 142-2.2. Here, Plaintiffs have adequately alleged that (i) Defendants were Plaintiffs' employers under the FLSA and NYLL; and (ii) that Defendants failed to pay them at the required overtime rate for time worked in excess of forty hours per week.

"For default judgments on FLSA and NYLL claims, 'the plaintiff's recollections and estimates of hours worked are presumed to be correct.'" See Romero, 2017 WL 5592681, at *3 (quoting Saucedo v. On the Spot Audio Corp., 2016 WL 8376837, at *3 (E.D.N.Y. Dec. 21, 2016)); Searson v. Concord Mortg. Corp., 2018 WL 1175065, at *4 (E.D.N.Y. Jan. 29, 2018), rep. and rec. adopted, 2018 WL 1175147 (E.D.N.Y. Mar. 5, 2018) (citing Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 126 (E.D.N.Y. 2011); and Chun Jie Yin v. Kim, 2008 WL 906736, at *3 (E.D.N.Y. 2008)) (same).

Additionally, where a Defendants' records are inaccurate, a Plaintiffs' recollections and estimates of hours worked are presumed to be correct. See also Kuebel v. Black & Decker Inc., 643 F.3d 352, 362-363 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)); McGlone v. Contract Callers, Inc., 49 F. Supp. 3d 364, 370-371 (S.D.N.Y. 2014) (quoting 29 U.S.C. § 211(c); and citing 29 C.F.R. § 516.2) ("it is the employer's responsibility to

'make, keep, and preserve' records of employee wages and conditions of employment"); Harold Levinson Assocs., Inc. v. Chao, 37 Fed. Appx. 19, 20-21 (2d Cir. 2002) (citing Anderson, 328 U.S. at 686-687) ("burden is on an employer properly to record hours"); see also 29 U.S.C. § 211(c) (requiring "[e]very employer [to] . . . make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ."); 29 C.F.R. § 516.2(a)(7) (requiring employers to maintain and preserve payroll or other records containing employees' "hours worked each workday and total hours worked each workweek"); 12 NYCRR § 142-2.6 (requiring employers to maintain employment records); Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 66 (2d Cir. 1997) (concluding that when a defendant fails to maintain the required employment records, the employee may submit sufficient evidence from which violations of the FLSA and the amount of damages may be inferred); McGlone, 49 F. Supp. 3d at 371 (quoting Anderson, 328 U.S. at 687-88); McGlone, 49 F. Supp. 3d at 371 (citing Harold Levinson Assocs., Inc., 37 Fed. Appx. at 20-21); Harold Levinson Assocs., Inc., 37 Fed. Appx. at 21 (quoting Anderson, 328 U.S. at 686-687) ("The burden is on an employer properly to record hours, and an employee need only as a *prima facie* matter present an estimate of damages that is satisfactory as 'a matter of just and reasonable inference'").  Here, Plaintiffs have offered extensive allegations that Defendants' records are inaccurate, including that many hours were not paid to Plaintiffs at all and that meal periods were deducted from their hours worked even though many of the Plaintiffs were frequently required to work during their meal periods.

Plaintiffs establish that throughout their employment as a non-exempt laborers, they regularly worked in excess of forty hours during their workweeks in which they were employed by Defendants.  However, Defendants failed to compensate Plaintiffs for their time worked in

excess of forty hours per week at a rate of at least one and one-half times their regular rate of pay. Plaintiffs establish that Defendants paid them their straight-time, regular hourly rate of pay for many hours worked in excess of forty hours.  This is supported by Defendants' paystubs produced for some Plaintiffs in this action, which reflects that Plaintiffs were paid overtime for certain hours at their straight-time rate of pay (which is revealed when the compensation is divided by their regular hourly rate) under labels such as "ot."  Additionally, Defendants failed to pay many of the Plaintiffs at any rate of pay for certain hours worked in excess of forty hours, and deducted the duration of meal periods from certain Plaintiffs hours worked even though they frequently worked through their meal periods, thereby failing to compensate them at any rate of pay for those hours worked in excess of forty hours.  Accordingly, Plaintiffs have established that Defendants are liable to Plaintiffs for violating the overtime provisions of the FLSA and NYLL throughout their employment.

        *vi.*    <u>*Defendants Failed to Timely Issue Wages Earned Under NYLL § 191*</u>

NYLL § 191 requires that manual workers be "paid weekly and not later than seven calendar days after the end of the week in which wages are earned." NYLL § 191(1)(a); <u>see also</u> <u>Vega v. CM and Assocs. Constr. Mgmt., LLC</u>, 107 N.Y.S.3d 286 (1st Dep't 2019)[3] (right to sue for violation of NYLL § 191); <u>Phillips v. Max Finkelstein, Inc.</u>, 73 Misc. 3d 1, 2-4 (App. Term.

---

[3] This court is bound to apply the decisions of state appellate courts on matters of substantive law. <u>Argentina v. Emery World Wide Delivery Corp.</u>, 167 F.R.D. 359, 361 (E.D.N.Y. 1996) (citing <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938)) (state substantive law must be applied by federal courts); <u>In re Curb Serv. Laundry & Dry Cleaning</u>, 145 F.2d 756 (2d Cir. 1944) (federal courts must follow highest court of a state when construing a state statute); <u>Solomon v. Artuz</u>, 2000 WL 863056, at *7 (S.D.N.Y. June 28, 2000) (citing <u>McCarthy v. Olin Corp.</u>, 119 F.3d 148, 153 (2d Cir.1997); <u>In re Brooklyn Navy Yard Asbestos Litig.</u>, 971 F.2d 831, 850 (2d Cir.1992); and <u>Bank Brussels Lambert v. Chase Manhattan Bank, N.A.</u>, 1995 WL 731620, at *1 (S.D.N.Y. Dec. 8, 1995)) ("In the absence of a New York Court of Appeals decision, an Appellate Division decision interpreting New York law is instructive as to what the New York Court of Appeals would hold."); <u>Sorto</u>, 2020 WL 7693108, at *2 (quoting <u>Broder v. Cablevision Sys. Corp.</u>, 418 F.3d 187, 199-200 (2d Cir. 2005) ("As a federal court applying state law, [the Court is] generally obliged to follow the state law decisions of state intermediate appellate courts."). In this instance, this Court is bound to follow the <u>Vega</u> decision as it is a ruling by the highest New York court to have squarely addressed the issue. See <u>Mountain View Coach Lines, Inc. v. Betty Storms</u>, 102 A.D.2d 663, 664 (2d Dep't 1984).

2021) (quoting Vega, 107 N.Y.S.3d at 288) (adopting Vega's holdings); Carrera v. DT Hosp. Grp.,

2021 WL 6298656, at *10-11 (S.D.N.Y. Nov. 1, 2021), report and recommendation adopted, 2021

WL 6298654 (S.D.N.Y. Dec. 7, 2021) (finding a private right of action exists under NYLL § 191,

acknowledging Vega is governing authority as the highest and sole appellate court to address these

issues, and awarding liquidated damages for late paid wages and for tips and gratuities remitted

more than seven days after being earned); Caul v. Petco Animal Supplies, Inc., 2021 WL 4407856,

at *2-4 (E.D.N.Y. Sept. 27, 2021) (collecting cases) (finding a private right of action exists under

NYLL § 191 and holding that "[s]ince Vega, every court in this Circuit to consider that decision

appears to have followed its construction of the New York Labor Law" and there is no cogent

reason not to follow *Vega* and these subsequent decisions); Rodrigue v. Lowe's Home Centers,

LLC, 2021 WL 3848268, at *2, 4-6 (E.D.N.Y. Aug. 27, 2021) (collecting cases) (same); Caccavale

v. Unisys Corp., Docket No. 20-cv-00974 (GRB) (AKT) (E.D.N.Y. Feb. 2, 2021) (denying motion

to dismiss NYLL § 191 claims, finding a private right of action exists under NYLL § 191, and

denying request for interlocutory appeal because there is no "substantial grounds for difference of

opinion" as district courts have consistently found "that late payment of wages is a violation of

Section 191 of NYLL for which there is a private right of action and [affords] remedies utilizing

the damages provision at Section 198" which provides for liquidated damages); Beh v. Cmty. Care

Companions Inc., 2021 WL 3914297, at *2 (W.D.N.Y. Feb. 1, 2021) (citing Vega v. CM and

Assocs. Constr. Mgmt., LLC, 107 N.Y.S.3d 286 (1st Dep't 2019)) (right to sue for violation of

NYLL § 191); Mabe v. Wal-Mart Assocs., Inc., 2021 WL 1062566, at *5 (N.D.N.Y. Mar. 18,

2021) (same); Scott v. Whole Foods Market, 2019 WL 1559424 (E.D.N.Y. Apr. 9. 2019) (same);

Rojas v Hi-Tech Metals, Inc., 2019 WL 4570161, at *3 (Sup. Ct. Queens Cnty. Sept. 11, 2019)

(same); Sorto v. Diversified Maintenance Systems, LLC, 2020 WL 7693108, at *2 (E.D.N.Y. Dec.

28, 2020) (citing <u>Vega v. CM and Assocs. Constr. Mgmt., LLC</u>, 107 N.Y.S.3d 286 (1st Dep't 2019)) (same); <u>see also</u> <u>Nakahata v. New York-Presbyterian Healthcare Sys., Inc.</u>, 723 F.3d 192, 202 (2d Cir. 2013) (under NYLL, "[u]nlike an overtime claim, a gap-time claim requires no predicate showing of minimum hours worked; rather, an allegation of hours worked without compensation may give rise to a gap-time claim."); <u>Bowen v. Baldwin Union Free Sch. Dist.</u>, 2018 WL 4560726, at *6 (E.D.N.Y. Aug. 31, 2018); NYLL § 198.  Many common, physical labor positions constitute manual workers. N.Y. Dep't of Labor Counsel Op. Letter, RO-09-0115, Dec. 2, 2009 (finding barbers and hairdressers to be manual workers); N.Y. Dep't of Labor Counsel Op. Letter, RO-08-0139, Dec. 1, 2008 (cooks and wait staff are manual workers).[4]  Thus, Plaintiffs, as laborers in the construction industry, are quintessential manual workers.

Here, Defendants violated the NYLL § 191 in multiple manners.  First, Defendants repeatedly issued Plaintiffs Hernandez, Aparicio, Diaz, Lacerda, Lopez, Guzman, Basurto, Sanchez, Bastos, and Chila Lopez paychecks for work performed that were returned for insufficient funds.  Second, Defendants commonly failed to pay Plaintiffs Hernandez, Aparicio, Diaz, Lopez, Guzman; Basurto, Lacerda, Rodriguez, Sanchez, Silva, Hemmen, Bastos, and Chila Lopez even at their straight-time rate for certain hours worked, including deducting the duration of meal periods from certain Plaintiffs hours worked even though they frequently worked through their meal periods, resulting in them working many hours without any compensation.  Third, with

---

[4] The New York Department of Labor "interprets 'physical labor' to broadly include countless physical tasks performed by employees," an "interpretation…in line with the instruction of the New York Court of Appeals providing that the Labor Law should be read broadly in favor of worker protections." <u>See</u> N.Y. Dep't of Labor Counsel Op. Letter, RO-09-0115, Dec. 2, 2009 (citing <u>Red Hook Cold Storage Co. v. Dep't of Labor</u>, 295 N.Y. 1 (1945)); <u>Hudson Valley Mall Dental v. Commissioner of Labor</u>, PR 12-034 (Indus. Bd. of Appeals Aug. 7, 2014) ("The traditional notion of manual worker, the 'mechanic, workingman or laborer' generally includes a sense of interchangeable physical labor that can be done by multiple individuals with the capacity to move material or things from one place to another" and include "typically low-skilled" workers that "can be easily replaced by other able-bodied workers.  This general skill level and easy replacement led to labor laws aimed to protect workers by insuring that workers who were dependent upon wages earned for a week's work received them on a weekly basis").

respect to Plaintiff Hemmen, Defendants failed to pay him entirely for two pay periods of work. As such, these wages were paid untimely or not at all in violation of NYLL § 191 as they were not paid on a weekly basis. See NYLL § 191(1)(a).

> ### vii.  *Defendants Failed to Pay Wages Earned to Plaintiffs in Violation of New York Common Law*

Under New York law, "[t]he elements of unjust enrichment are that the defendants were enriched, at the plaintiff's expense, and that it is against equity and good conscience to permit the defendants to retain what is sought to be recovered." Cty. of Nassau v. Expedia, Inc., 992 N.Y.S.2d 293, 296 (2d Dep't 2014) (citing Old Republic Nat. Title Ins. Co. v. Luft, 859 N.Y.S.2d 261, 262 (2d Dep't 2008)); Unicorn Crowdfunding, Inc. v. New St. Enter., Inc., 2020 WL 7401735, at *20 (S.D.N.Y. Dec. 17, 2020) (citing Leibowitz v. Cornell Univ., 584 F.3d 487, 509 (2d Cir. 2009)). "'The essence of unjust enrichment is that one party has received money or a benefit at the expense of another.'" Expedia, Inc., 992 N.Y.S.2d at 296 (quoting Goldman v. Simon Prop. Grp., Inc., 869 N.Y.S.2d 125, 134 (2d Dep't 2008))

"'[T]o recover in quantum meruit, New York law requires a claimant to establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" Unicorn Crowdfunding, Inc., 2020 WL 7401735, at *20 (quoting Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2000)); Caribbean Direct, Inc. v. Dubset, LLC, 954 N.Y.S.2d 66, 67 (1st Dep't 2012) (citing Moses v. Savedoff, 96 A.D.3d 466, 471, 947 N.Y.S.2d 419 (1st Dep't 2012)).

"Although unjust enrichment and quantum meruit have nominally different elements, courts in this Circuit analyze them as a single quasi-contract claim for restitution." Unicorn Crowdfunding, Inc., 2020 WL 7401735, at *20 (citing Leibowitz, 584 F.3d at 509 n.9; Mid-

Hudson, 418 F.3d at 175; Newman & Schwartz v. Asplundh Tree Expert, Co., 102 F.3d 660, 663 (2d Cir. 1996)).

Here, Defendants' conduct of failing to pay numerous for many of their hours worked at any rate of pay falls squarely within the elements of both claims. By performing work for Defendants without receiving compensation earned, the Defendants were enriched at the Plaintiffs' expense, and that it is against equity and good conscience to permit the Defendants to retain the wages earned by Plaintiffs. Similarly, by performing work for Defendants without receiving compensation earned, Plaintiffs performed their services during their employment in good faith, Defendants accepted the Plaintiffs' services, Plaintiffs had an expectation that they would receive full compensation for their services during their employment, and the reasonable value of the services are established from their agreed upon regular hourly rates of pay and their hours worked. Thus, Defendants have violated the New York common law with respect to Plaintiffs' claims for unjust enrichment and quantum meruit.

### viii.     *Plaintiffs are Entitled to 100% Liquidated Damages*

Plaintiffs have established their entitlement to liquidated damages under the NYLL. See Romero v. Anjdev Enter., Inc., 2017 WL 548216, at *12 (S.D.N.Y. Feb. 10, 2017) ("Accordingly, Plaintiffs may seek liquidated damages under whichever statute provides the greater relief"); Khan v. Party Pizza Inc., 2016 WL 4597479, at *5 n.9 (E.D.N.Y. Aug. 16, 2016), rep. and rec. adopted, 2016 WL 4596001 (E.D.N.Y. Sept. 2, 2016) ("When confronted with the choice whether to award liquidated damages under the NYLL or the FLSA, the court should choose whichever statute provides the higher award"). Plaintiffs may recover 100% liquidated damages for any NYLL wage claim accruing on or after April 9, 2011, "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." See Soto v. Armstrong

Realty Mgmt. Corp., 2016 WL 7396687, at *4 (S.D.N.Y. Dec. 21, 2016) (citations and internal quotations omitted); Calle, 2017 WL 6942652, at *15 (citing NYLL § 663(1)); NYLL § 663(1)). "A defaulting defendant cannot make a showing of good faith." Soto, 2016 WL 7396687, at *4; Chen v. JP Standard Constr. Corp., 2016 WL 2909966, at *12 (E.D.N.Y. Mar. 18, 2016) (citing Peralta v. M & O Iron Works, Inc., 2014 WL 988835, at *10 (E.D.N.Y. Mar. 12, 2014)) ("Obviously, as a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief."); Peralta, 2014 WL 988835, at *10 (same). Defendants have also been subject to multiple wage and hour lawsuits over several years without remedying their pay practices, evidencing their intentional wage violations. Thus, because Defendants cannot make a showing of good faith due to their default, in addition to Plaintiffs' allegations of willfulness and multiple lawsuits for similar conduct, Plaintiffs are entitled to 100% liquidated damages equal to their unpaid wages under the NYLL.

> ix. *Defendants Failed to Provide Plaintiffs (except Plaintiffs Diaz and Lopez) with the Notice Required by NYLL § 195(1)*

Under the NYLL, an employer must "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing" information regarding numerous categories of information, including, *inter alia*, the employee's rates of pay, regular designated pay day, and employer information. NYLL § 195(1); Romero, 2017 WL 5592681, at *6, 8 (finding employer liable under NYLL § 195(1)(a) and noting that statute "requires employers to provide employees, at the time of hiring, with notice of their rate of pay and the employer's address and telephone number"); Galicia v. 63-38 Diner Corp., 2015 WL 1469279, at *3 (E.D.N.Y. Mar. 30, 2015) (citing NYLL § 195(1)); 12 NYCRR 146-2.2; see also NYLL § 198(1-b). Plaintiffs (except Plaintiffs Diaz and

Lopez) allege Defendants did not provide a wage notice to them at their times of hire, in violation of NYLL § 195(1).

        x.    *Defendant Failed to Provide Accurate Wage Statements to Plaintiffs as Required by NYLL § 195(3)*

Under the NYLL, an employer is required to "furnish each employee with a statement with every payment of wages" detailing numerous categories of information, including, *inter alia*, the employee's regular and overtime rates of pay and the amount of regular and overtime hours worked each pay period. NYLL § 195(3); Romero, 2017 WL 5592681, at *6 (citing NYLL § 195(3)); Copper v. Calvary Staffing, LLC, 132 F. Supp. 3d 460, 466-469 (E.D.N.Y. 2015) (denying motion to dismiss where plaintiffs alleged violations of NYLL § 195(3) because the wage statements that defendants did provide were *inaccurate* in that they did not list the accurate number of overtime hours worked); Mondragon v. Keff, 2019 WL 2551536, at *12 (S.D.N.Y. May 31, 2019), report and recommendation adopted, 2019 WL 2544666 (S.D.N.Y. June 20, 2019) (finding violation based, in part, on defendants providing wage statements that inaccurately reflected hours worked); Wallace v. J.M. Romich Enterprises, Inc., 2018 WL 3023391, at *9-10 (W.D.N.Y. June 18, 2018) (citing Copper, 132 F. Supp. 3d at 468) (holding that a defendants' failure to provide accurate wage statements constitutes a violation of NYLL § 195(3)); Rojas v. Splendor Landscape Designs Ltd., 268 F. Supp. 3d 405, 412-413 (E.D.N.Y. 2017) (quoting Copper, 132 F. Supp. 3d at 466-469) (noting that "where defendants maintained 'inaccurate time records' and paid plaintiffs 'according to those inaccurate time records,' rather than the hours actually worked, a violation of the [claim under NYLL § 195(3) was adequately pled" and finding violation of NYLL § 195(3) where Defendant provided wage statements that did not accurately reflect plaintiff's hours worked or rates of pay); Tanski v. AvalonBay Communities, Inc., 2016 WL 8711203, at *11-12 (E.D.N.Y. Sept. 30, 2016) (quoting Copper, 132 F. Supp. 3d at 468) (finding that a defendants' failure to

provide accurate wage statements with respect to hours actually worked constitutes a violation of NYLL § 195(3) and noting the NYLL § 195(3) requires "the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee.'"); Galicia, 2015 WL 1469279, at *3, 8 (citing NYLL § 195(3), 198(1-d)); Huo v. Go Sushi Go 9th Ave., 2014 WL 1413532, at *4-5 (S.D.N.Y. Apr. 10, 2014) (citing NYLL § 195(3)); see also NYLL § 198(1-d).  Specifically, under the NYLL, defendants are required to "furnish each employee with a statement with every payment of wages" that includes, *inter alia*, the employee's "regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked" and the employee's "rate or rates of pay and basis thereof," gross wages, deductions, and net wages for each pay period. NYLL § 195(3); see also 12 NYCRR 142-2.7.  As Plaintiffs established that Defendants' failed to properly record or pay for all hours worked during each workweek, Plaintiffs established that Defendants failed to provide them with wage statements that accurately reflected their regular and overtime hours worked, their overtime rates, gross wages, deductions and net wages for each pay period during their employment, in violation of NYLL § 195(3).

I.    **THE COURT SHOULD AWARD DAMAGES FOR DEFENDANTS' VIOLATIONS OF THE FLSA, NYLL AND NEW YORK COMMON LAW**

Because Plaintiffs have established Defendants' liability under the FLSA, NYLL and New York common law, the Court awards Plaintiffs damages in the amounts described below for each of Plaintiffs' claims.[5]  Here, Plaintiffs' declarations and the Second Amended Complaint provide a sufficient basis to award damages under the FLSA, NYLL and New York common law.

---

[5]Damages may be awarded based on written submissions. See Fed. R. Civ. P. 55(b)(2); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) (affirming district court's determination that a court, rather than order an evidentiary hearing, "may rely on detailed affidavits or documentary evidence" to assess and award damages as court must simply ensure that "there was a basis for the damages specified in a default judgment"); Calle, 2017 WL 6942652, at *6 (citing Fustok, 873 F.2d at 40) (court's inquiry and assessment of damages "may be accomplished by evaluating

A. **Plaintiffs are Entitled to Damages for Unpaid FLSA and NYLL Compensation**

To calculate the amount of overtime damages owed, the Court must first determine the amount of Plaintiffs' regular rates of pay. The regular rate of pay "'is the hourly rate *actually paid* the employee for the normal, non-overtime workweek for which he is employed.'" Charvac v. M & T Project Managers of New York, Inc., 2015 WL 5475531, at *5 (E.D.N.Y. June 17, 2015) (quoting Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)) Here, Plaintiffs were hourly employees and, as such, the regular hourly rate of the Plaintiffs are reflected in their compensation records or based on their declarations. Upon assessing the employee's regular rate, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for hours worked in excess of forty hours in one workweek. 12 NYCRR 142-2.2; Perez v. Pino Grocery Corp., 2018 WL 4138935, at *6 (E.D.N.Y. Apr. 16, 2018), report and recommendation adopted, 2018 WL 4119236 (E.D.N.Y. Aug. 29, 2018); Piedra, 2018 WL 1136039, at *12; Demirovic v. Ortega, 2018 WL 1935981, at *3 (E.D.N.Y. Apr. 24, 2018), aff'd, 771 F. Appx. 111 (2d Cir. 2019); Guerrero v. Mijoy Deli Corp., 2011 WL 13383440, at *2 (S.D.N.Y. Apr. 26, 2011). Where an employee is paid their straight-time, regular rate of pay for overtime hours worked, Plaintiffs are entitled to the difference between the lawful overtime rate of pay of one and one-half times their regular rate of pay and the amount of wages already paid to them, which is commonly referred to as an employee's half-time rate of pay. Guerrero, 2011 WL 13383440, at *2 (citing Roman v. Maietta Const., Inc., 147 F.3d 71, 76 (1st Cir. 1998)) (noting that, in such circumstances, plaintiffs are "entitled to back pay, which is the difference between the lawfully required pay and the pay actually received").

---

and analyzing affidavits and other documentary evidence submitted by the plaintiff with respect to the quantification of damages").

Here, Plaintiffs were paid a set hourly rate of pay for many of their hours worked. Thus, for overtime hours worked for which straight-time, regular rate compensation was paid, the Court awards Plaintiffs overtime compensation at their applicable half time rate of pay for every hour worked in excess of forty. However, for overtime hours worked for which no compensation was paid, the Court awards Plaintiffs overtime compensation at a rate of one and one-half times their regular rate for every hour worked in excess of forty. Thus, Plaintiffs are entitled to damages of $23,570.71 to Mario J. Hernandez, $96,166.88 to Jose Milton Aparicio, $2,301.25 to Fidencio Orellana Diaz, $1,400.00 to Diego Lacerda, $123,165.00 to Francisco Lopez, $31,705.00 to Assis Rodriguez, $46,161.38 to Vradimir A. Guzman, $44,149.50 to Ramon Basurto, $16,676.25 to Guillermo A. Sanchez, $6,470 to Walney Silva, $5,656.00 to Brandon Hemmen, $12,635.00 to Jefferson Bastos and $7,727.50 to Victor Chila Lopez for unpaid overtime compensation under the FLSA and NYLL.[6]

### B.    Plaintiffs are Entitled to an Award of Liquidated Damages under the NYLL

Plaintiffs are also entitled to liquidated damages in the amount of 100% of their unpaid overtime compensation under both the FLSA and NYLL. Soto, 2016 WL 7396687, at *4; Calle, 2017 WL 6942652, at *15 (citing NYLL § 663(1)); Chen, 2016 WL 2909966, at *12; Peralta, 2014 WL 988835, at *10; Perez, 2018 WL 4138935, at *7 (awarding liquidated damages in default); NYLL §§ 198, 663(1). Plaintiffs are entitled to have liquidated damages awarded under the statute that offers the greater amount of recovery, in this case, the NYLL. Romero, 2017 WL 548216, at *12; Khan, 2016 WL 4597479, at *5 n.9; Perez, 2018 WL 4138935, at *7. Accordingly, Plaintiffs are entitled to damages of $23,570.71 to Mario J. Hernandez, $96,166.88 to Jose Milton Aparicio, $2,301.25 to Fidencio Orellana Diaz, $1,400.00 to Diego Lacerda, $123,165.00 to Francisco

---

[6] Plaintiffs' damages for violation of the New York common law are co-extensive with Plaintiffs' various claims under the FLSA and NYLL. As such, the Court does not does not separately award damages for those claims.

Lopez, $31,705.00 to Assis Rodriguez, $46,161.38 to Vradimir A. Guzman, $44,149.50 to Ramon Basurto, $16,676.25 to Guillermo A. Sanchez, $6,470 to Walney Silva, $5,656.00 to Brandon Hemmen, $12,635.00 to Jefferson Bastos and $7,727.50 to Victor Chila Lopez for liquidated damages equal to the amount of their unpaid wages under the NYLL.

### C. Plaintiffs (except Diaz and Lopez) are Entitled to Statutory Awards for Defendants' Violations of NYLL § 195(1)

Since February 27, 2015, where an employee is not provided with the wage notice required by NYLL § 195(1) "within ten business days of his or her first day of employment" then the employee is entitled to "damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." NYLL § 198(1-b); Farmer v. Dr. Lucia Patino, Optometrist, P.C., 2019 WL 110956, at *7 (E.D.N.Y. Jan. 4, 2019) (citing NYLL §§ 195(1), 198(1-b)) ("An employee who does not receive such notice is entitled to damages of $50 per day, up to a total of $5,000."); Escobar v. Del Monaco Bros. Indus. Inc., 2016 WL 11481190, at *11 (E.D.N.Y. July 27, 2016), rep. and rec. adopted sub nom., Juan Escobar v. Del Monaco Bros. Indus. Inc., 2016 WL 4275705 (E.D.N.Y. Aug. 13, 2016). Thus, Plaintiffs (except Diaz and Lopez) are each entitled to the full statutory penalty of $5,000.00 (100 workdays x $50.00 per workdays), except Plaintiff Diego Lacerda is entitled to $1,800.00 as a statutory penalty, under NYLL § 198(1-b).

### D. Plaintiffs are Entitled to Statutory Awards for Defendants' Violations of NYLL § 195(3)

Since February 27, 2015, where an employee is not provided with a wage statement with each payment of wages as required by NYLL § 195(3), then the employee is entitled to "damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." NYLL § 198(1-d); Farmer, 2019 WL 110956, at *7 (citing NYLL §§ 195(3), 198(1-d)); Escobar, 2016 WL 11481190, at *11. Here, Plaintiffs

established that they received inaccurate wage statements throughout their employment and worked more than the necessary twenty workdays after February 27, 2015 and are each therefore entitled to the full statutory penalty of $5,000.00 pursuant to NYLL § 198(1-d).

### E.    Plaintiffs are Entitled to Damages for Violations of NYLL § 191

Discussing violations of NYLL § 191, the Appellate Division, First Department, held that liquidated damages are available under NYLL § 198(1-a) "to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages." Vega, 107 N.Y.S.3d at 288; see NYLL § 198.  Any untimely payment of wages, even if ultimately paid before the commencement of litigation, constitutes its own underpayment warranting an award of liquidated damages. Vega, 107 N.Y.S.3d at 288 ("…the term underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action…The word underpayment is the noun for the verb underpay; underpay is defined as 'to pay less than what is normal or required.'").  Thus, liquidated damages are to be awarded as the remedy for violations of NYLL § 191 in the amount of the untimely paid wages, pursuant to NYLL § 198(1-a). Id. at 287-88 (citing Gottlieb v. Kenneth D. Laub & Co., 82 N.Y.2d 457, 463 (1993)) ("The remedies provided by section 198(1-a) apply to 'violations of article 6 and section 191(1)(a) is a part of article 6."); Carrera, 2021 WL 6298656, at *10-11 (following Vega, awarding liquidated damages for late paid wages and for tips and gratuities remitted more than seven days after being earned); Caccavale v. Unisys Corp., Docket No. 20-cv-00974 (GRB) (AKT) (E.D.N.Y. Feb. 2, 2021) (noting that district courts have consistently found "that late payment of wages is a violation of Section 191 of NYLL for which there is a private right of action and [affords] remedies utilizing the damages provision at Section 198" which provides for liquidated damages); NYLL § 198(1-a) ("In any action instituted in the

courts upon a wage claim by an employee…in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer provides a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due.").

Thus, Plaintiffs are entitled to untimely – or unpaid – wages as well as liquidated damages equal to the amount of their untimely wages, or wages not paid weekly or paid later than seven calendar days after the end of the week in which wages are earned.  As noted, Defendants paid certain Plaintiffs paychecks for wages earned but that were returned for insufficient funds. Moreover, Plaintiff Hemmen was not timely – or ever – paid for two weeks of compensation earned.[7]  Thus, Plaintiffs are entitled to damages of $19,818.75 to Mario J. Hernandez, $27,781.25 to Jose Milton Aparicio, $12,801.25 to Fidencio Orellana Diaz, $6,667.50 to Diego Lacerda, $74,620.00 to Francisco Lopez, $5,780.00 to Assis Rodriguez, $6,674.63 to Vradimir A. Guzman, $5,145.00 to Ramon Basurto, $10.688.00 to Guillermo A. Sanchez, $24,010.00 to Walney Silva, $4,144.00 to Brandon Hemmen, $14,481.25 to Jefferson Bastos and $3,179.00 to Victor Chila Lopez as liquidated damages for untimely paid wages under the NYLL.[8]

---

[7] Additionally, Plaintiffs established that certain Plaintiffs were not paid any compensation for certain hours worked or for work performed during their meal periods.  Although these allegations satisfy the requirements of NYLL § 191, Plaintiffs instead assessed these damages as unpaid overtime compensation under the FLSA and NYLL.

[8] Plaintiffs damages owed for untimely payments where payments of their wages for entire workweeks were delayed, either because such payments were returned for insufficient funds or such wages were never paid for an entire workweek, were assessed by determining their proper wages owed at their regular rates of pay for the first forty hours of work and their proper overtime rates of pay of one and one half times their regular rates of pay for hours worked in excess of for hours, based on their typical hours worked asserted in their declarations.

## II.    THE COURT AWARDS ATTORNEYS' FEES AND LITIGATION EXPENSES

### A.    Plaintiffs are Prevailing Parties because Their Motion for Default was Granted

The FLSA provides, in relevant part, that in any action to recover wages, "[t]he court…*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added).   The NYLL also provides that "[i]n any action… in which the employee prevails, the court *shall* allow such employee reasonable attorney's fees…" NYLL § 198(1-a) (emphasis added).

A plaintiff is the prevailing party for the purposes of the FLSA and the NYLL "if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Likewise, to qualify  as a prevailing party, a plaintiff must demonstrate a change in the legal relationship  between him/herself and the defendant arising from the resolution of the lawsuit. See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).  In wage and hour cases, like discrimination cases, the award of attorneys' fees need not be proportional to the  damages recovered by plaintiff because the prosecution of such cases vindicates rights and policies identified by the Congress. Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509 (S.D.N.Y. 2011); Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020).

On August 21, 2021, the Court entered an order granting Plaintiffs' motion for a default judgment with respect to liability. D.E. 122.  Thus, as Plaintiffs have established liability on their clams, D.E. 122, and the Court has awarded damages in this order, Plaintiffs are prevailing parties. See Williams v. Ernie Tropical Jerk & Seafood Ctr., Inc., 2016 WL 8711489, at *4-5 (E.D.N.Y. Aug. 22, 2016), rep. and rec. adopted as modified, 2016 WL 8711078 (E.D.N.Y. Sept. 9, 2016) (recommending awarding fees and costs on a motion for a default judgment as prevailing parties).

Plaintiffs have established that Defendants are liable for and are being awarded damages for unpaid overtime under the FLSA and NYLL, unpaid wages and statutory damages pursuant to NYLL § 191, liquidated damages and statutory damages for violations of NYLL 195(1), (3), and for pre- and post-judgment interest, as well as for violations of New York common law for claims of unjust enrichment and quantum meruit.  Where liability has been established already and damages are awarded, the legal relationship between Plaintiffs and the Defendants has been altered.  Accordingly, Plaintiffs are entitled to recover their reasonable attorneys' fees and costs spent in connection with this lawsuit.

### B.    The Lodestar Approach is the Appropriate Measure of Damages

The traditional approach to determine a fee award is the "lodestar" calculation, which is the number of hours spent towards the litigation multiplied by a reasonable hourly rate.  See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).  Specifically, the Supreme Court has held that:

> [a]lthough the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to the prevailing market rates in the relevant community…  Second, the lodestar method is readily administrable, and unlike the Johnson approach, the lodestar calculation is objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

Perdue v. Kenny A. ex rel. Winn, 130 S.Ct. 1662, 1672 (2010) (discussing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974)).  One year later, in recognition of the Perdue decision, the Second Circuit held that "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing Perdue, 130 S.Ct. at 1673).  Since Millea, the Second Circuit has reaffirmed the use of the lodestar approach to calculate attorneys' fees. See, e.g., Stanczyk v. City of New York, 752 F.3d 273, 284-285 (2d Cir. 2014).  Utilizing the lodestar method to award attorneys' fees based on the attorneys' regular hourly rate

effectuates the greater public policy consideration of providing a FLSA plaintiff with quality representation, because counsel is placed in the same condition as he would have been in the regular course of business, representing any other plaintiff who pays out of pocket. See Allende, 783 F. Supp. 2d at 513-514 (citations omitted). This consideration is of great importance because the typical FLSA plaintiff is represented on a contingent fee basis, and there is no guarantee that counsel will be paid for his or her work, despite diligent effort.

To arrive at a lodestar calculation, "[t[he party seeking an award of attorneys' fees should submit evidence supporting the hours worked and rates claimed." Hensley, 461 U.S. at 434.

### C.    Plaintiffs' Counsel's Requested Fees are Reasonable

Courts in this district have determined that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage and hour cases. Allende, 783 F.Supp.2d at 514-15 (approving rates of $450 for law firm partners in FLSA cases); HRB Prof'l Res. LLC v. Bello, No. 17-CV-7443 (KMK), 2018 WL 4629124, at *8 (S.D.N.Y. Sept. 27, 2018) (collecting cases) (awarding a partner a rate of $440.00 per hour and citing approvingly of cases awarding partners and experienced litigators rates of $400.00 to $600.00 per hour and associates rates of $300.00 per hour); Pineda v. Frisolino, Inc., 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018) (approving rates for partner and senior associate at $400.00 per hour and other associates at $300.00 per hour in FLSA and NYLL litigation); Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 2018 WL 2976009, at *4 (S.D.N.Y. June 13, 2018) (approving rate of $450.00 per hour for partner, $325 for senior associate, and $275 per hour for junior associate); Payne v. Kirkland, 2017 WL 5952707, at *3-4 (S.D.N.Y. Nov. 30, 2017) (noting partners in small firms have been awarded rates of $550 to $650 per hour, and awarding partner with 13 years of specialized experience in civil rights cases a rate at $475.00 per hour); Polit v. Glob. Foods Int'l Corp., 2017 WL 1373907, at *8 (S.D.N.Y.

Apr. 13, 2017) (awarding $300.00 to associate with four years of experience who acted as lead counsel in FLSA case); Sanchez v. I&A Rest. Corp., 2017 WL 2537814, at *4 (S.D.N.Y. May 22, 2017) (awarding hourly rate of $450 to partner with significant experience in FLSA actions); Soto, 2016 WL 7396687, at *5 (finding $450 per hour a reasonable rate for experienced litigator in FLSA case; Gonzalez v. Scalinatella, Inc., 112 F.Supp.3d 5, 28 (S.D.N.Y. 2015) (awarding hourly rate of $450 to partner with significant experience in FLSA actions); Torres v. Gristede's Operating Corp., 2012 WL 3878144, at *3 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 F. Appx. 1 (2d Cir. 2013) (citing Clover v. Shiva Realty of Mulberry, Inc., 2011 WL 1832581, at *1 (S.D.N.Y. May 13, 2011)) (noting, ten years ago, in FLSA and NYLL matter that "[c]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."); Gurung v. Malhotra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (awarding hourly rate of $450 to partner with demonstrated experience and skill in employment litigation); Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *8 (S.D.N.Y. Sept. 30, 2010) (citing LV v. New York City Dept. of Educ., 700 F. Supp. 2d 510, 518-525 (S.D.N.Y 2010)) (noting in FLSA and NYLL matter that "[t]he rates sought by plaintiffs' counsel ($400 for partners, $350 for litigation counsel, $300 for associates with three to seven years of experience, and $200 for associates with one to two years of experience) are consistent with (or lower than) the rates used in other cases involving attorney fee awards..."); Saunders v. City of New York, 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009) (approving rate, twelve years ago, of $425.00 per hour for partner, $300 for senior associate, and $250 per hour for junior associate with approximately four years of experience in FLSA matters).

36

In some wage cases, courts have approved fees above $450 per hour for highly experienced counsel. See, e.g., Scott v. City of New York, 642 F.3d 56, 59 (2d Cir. 2011) (holding that rate of $550 per hour in FLSA case was reasonable); Lora v. J.V. Car Wash, Ltd., 2015 WL 7302755, at *4–6 (S.D.N.Y. Nov. 18, 2015) (adopting report and recommendation and finding $500 per hour to be reasonable rate in FLSA case for attorney with 28 years' experience); Guailpa v. N.Y. Pro Signs Inc., 2014 WL 2200393, at *9-10 (S.D.N.Y. May 27, 2014) (approving rate of $600 per hour, in wage-and-hour case, for attorney who graduated law school in 1995), rep. and rec. adopted sub nom., Guallpa v. N.Y. Pro Signs Inc., 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); Torres v. Gristede's Operating Corp., 2012 WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. Appx. 1 (2d Cir. 2013) (findings that hourly rates of $550 and $500 were reasonable for partners in FLSA case); Siegel v. Bloomberg L.P., 2016 WL 1211849, at *6 (S.D.N.Y. Mar. 22, 2016).

The Court approves Plaintiffs' requested fees based on hourly rates of $300.00 for senior associate, David D. Barnhorn, Esq. and $400.00 for Peter A. Romero, Esq. as reasonable and consistent with decisions in this district. See Carrera v. DT Hosp. Grp., 2021 WL 6298656, at *10-11 (S.D.N.Y. Nov. 1, 2021), report and recommendation adopted, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021) (approving hourly rate of $400.00 for Mr. Romero and $300.00 for Mr. Barnhorn in FLSA matter); Heng Chan v. Sung Yue Tung Corp., 2007 WL 1373118, at *4 (S.D.N.Y. May 8, 2007) (awarding $300 to sixth-year associate for work performed in FLSA case); Apolinario v. Luis Angie Deli Grocery Inc., 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015) (courts "have awarded $300 per hour for senior associates with at least eight years of experience"); LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 520 (S.D.N.Y. 2010) (finding rate of $300 in line with what junior and mid-level associates have received in this district).

The Court also approves Plaintiffs' requested fees based on an hourly rate of $100.00 for the firm's paralegal, Angelica Villalba, as reasonable and consistent with decisions in this district. See Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274 (E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grorcery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

Plaintiffs' Counsel has expended a total of 149.6 hours on this action. Plaintiffs' Counsel expended significant time and effort to prevail on Plaintiffs' claims. Plaintiffs' Counsel investigated Plaintiffs' claims, commenced this action, filed an Amended Complaint and Second Amended Complaint, conducted discovery, engaged in multiple mediations, appeared for conferences, created detailed damages calculations for the Plaintiffs, obtained certificates of Default, filed multiple motions, and prepared default and inquest submissions. Additionally, Plaintiffs' Counsel prepared Plaintiffs' motion for a default judgment and inquest memorandums seeking an award of damages. With respect to this application, Plaintiffs seek and are entitled to compensation for time spent on the preparation of their default and inquest submissions, and their

fee application. See Davis v. City of New Rochelle, 156 F.R.D. 549, 560 (S.D.N.Y 1994) (quoting Gagne v. Maher, 594 F.2d 336, 344 (2d Cir. 1979), aff'd, 448 U.S. 122 (1980)).

A party seeking fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. See New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-1148 (2d Cir. 1983). The time spent by Plaintiffs' Counsel prosecuting this action is described above and evidenced by Plaintiffs' Counsel's billing records. Exhibit BD. Multiplying these hours by the hourly rate of each attorney, results in a lodestar amount of $44,710.00.

The hours expended by Plaintiffs' Counsel represent hours and work necessary to properly represent Plaintiffs throughout this litigation over the course of more than four years and to bring this matter to its conclusion through a motion for a default judgment. Because of these efforts, and as Plaintiffs' motion for default was granted with respect to liability, Plaintiffs have prevailed on their claims and have been awarded damages. The hours expended on behalf of Plaintiffs in this matter are not duplicative nor excessive, and were all handled as efficiently as possible. Given the objective that statutory attorneys' fees compensate counsel sufficiently enough to promote qualified attorneys to represent plaintiffs on meritorious wage and hour claims, Fisher, 948 F.3d at 603 (citing Sand v. Greenberg, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)) (fees awards in wage and hour cases meant to encourage able, legal counsel to provide services to potential clients); Zeltser v. Merrill Lynch & Co., 2014 WL 4816134, at *8 (S.D.N.Y. Sept. 23, 2014) (quoting Sand, 2010 WL 69359, at *3; and citing Reyes v. Altamarea Grp., LLC, 2011 WL 4599822, at *1 (S.D.N.Y. Aug. 16, 2011)) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" and "The FLSA and state

wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights."), and the consideration that Plaintiffs' Counsel has demonstrated their hours that are not excessive or duplicative, Plaintiffs' Counsel has established that they are entitled to their legal fees in their entirety.

### D.    Plaintiffs' Counsel is Entitled to Reimbursement for Litigation Expenses

Plaintiffs' Counsel requests reimbursement of $1,421.00 in out-of-pocket litigation expenses. Exhibit BE.  As a prevailing party, in the event this motion for default is granted, Plaintiffs are entitled to reasonable costs.  The law is clear that a prevailing plaintiff in a FLSA action is entitled to "costs of the action." 29 U.S.C. § 216(b); Smith v. Nagai, 2012 WL 2421740, at *5-6 (S.D.N.Y. May 15, 2012), rep. and rec. adopted sub nom., Smith v. Saki Rest. Corp., 2012 WL 2428929 (S.D.N.Y. June 27, 2012) (citing 29 U.S.C. § 216(b); and NYLL § 198); Williams, 2016 WL 8711489, at *5.  Plaintiffs' Counsel's expenses were incidental and necessary to the representation of Plaintiffs, which include a filing fee in the amount of $400.00 and service or process fees in the amount of $1,021.00. Exhibit BE.  Plaintiffs' Counsel is entitled to reimbursement of $1,421.00 in out-of-pocket litigation expenses.

## III.    PRE-JUDGMENT INTEREST SHOULD BE AWARDED

"Although it is 'well settled' that prejudgment interest is not awardable under the FLSA," Khurana v. JMP USA, Inc., 2017 WL 1251102, at *17 (E.D.N.Y. Apr. 5, 2017) (citing Begum v. Ariba Disc., Inc., 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015)), "'the NYLL permits the award of both liquidated damages and pre-judgment interest." Id. (quoting Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015)).  Under the New York Civil Practice Law and Rules ("CPLR"), "'[i]nterest shall be at the rate of nine per centum per annum.'" Id. (quoting C.P.L.R. § 5004).  "Where, as here, unpaid wages are 'incurred at various times, interest shall be computed ... from a single reasonable intermediate date.'" Id. (quoting C.P.L.R. § 5001(b);

and citing Coulibaly v. Millennium Super Car Wash, Inc., 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013)). "Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest." Id. (citing *Fermin*, 93 F. Supp. 3d at 49) ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest....") (quotation omitted). "A common date is '[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed....'" Id. (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012)). Thus, Plaintiffs are entitled to daily pre-judgment interest from their respective midpoints (as reflected on their damages calculations) through the date of the entry for any default judgment.

## IV.    POST-JUDGMENT INTEREST SHOULD BE AWARDED

Plaintiffs are entitled to be awarded post-judgment interest, pursuant to 28 U.S.C. § 1961, which must be applied to "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; see also Khurana, 2017 WL 1251102, at *17 (citing 28 U.S.C. § 1961). Accordingly, Plaintiffs are awarded post-judgment interest, to be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. See 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."); see also Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute); Khurana, 2017 WL 1251102, at *17 (awarding post-judgment interest at federal rate).

## II.    <u>CONCLUSION</u>

Based on the foregoing, pursuant to Fed. R. Civ. P. 55, the Court hereby awards Plaintiffs damages in the following amounts: (1) awarding Plaintiffs damages of $23,570.71 to Mario J. Hernandez, $96,166.88 to Jose Milton Aparicio, $2,301.25 to Fidencio Orellana Diaz, $1,400.00 to Diego Lacerda, $123,165.00 to Francisco Lopez, $31,705.00 to Assis Rodriguez, $46,161.38 to Vradimir A. Guzman, $44,149.50 to Ramon Basurto, $16,676.25 to Guillermo A. Sanchez, $6,470.00 to Walney Silva, $5,656.00 to Brandon Hemmen, $12,635.00 to Jefferson Bastos and $7,727.50 to Victor Chila Lopez for unpaid overtime wages the FLSA and NYLL and for other unpaid wages under the NYLL; (2) awarding Plaintiffs damages of $23,570.71 to Mario J. Hernandez, $96,166.88 to Jose Milton Aparicio, $2,301.25 to Fidencio Orellana Diaz, $1,400.00 to Diego Lacerda, $123,165.00 to Francisco Lopez, $31,705.00 to Assis Rodriguez, $46,161.38 to Vradimir A. Guzman, $44,149.50 to Ramon Basurto, $16,676.25 to Guillermo A. Sanchez, $6,470.00 to Walney Silva, $5,656.00 to Brandon Hemmen, $12,635.00 to Jefferson Bastos and $7,727.50 to Victor Chila Lopez for liquidated damages under the NYLL; (3) awarding damages of $1,800.00 to Plaintiff Diego Lacerda and of $5,000.00 to each other Plaintiff (except for Plaintiffs Fidencio Orellana Diaz and Francisco Lopez) for violations of NYLL § 195(1); (4) awarding damages of $5,000.00 to each Plaintiff for violations of NYLL § 195(3); (5) awarding Plaintiffs damages of $19,818.75 to Mario J. Hernandez, $27,781.25 to Jose Milton Aparicio, $12,801.25 to Fidencio Orellana Diaz, $6,667.50 to Diego Lacerda, $74,620.00 to Francisco Lopez, $5,780.00 to Assis Rodriguez, $6,674.63 to Vradimir A. Guzman, $5,145.00 to Ramon Basurto, $10.688.00 to Guillermo A. Sanchez, $24,010.00 to Walney Silva, $4,144.00 to Brandon Hemmen, $14,481.25 to Jefferson Bastos and $3,179.00 to Victor Chila Lopez for violations of NYLL § 191; (6) awarding Plaintiffs' counsel attorneys' fees in the amount of $44,710.00, (7)

awarding Plaintiffs' counsel advanced litigation expenses in the amount of $1,421.00, (8) awarding

pre-judgment interest under the NYLL; and (9) awarding post-judgment interest under federal law.

**SO ORDERED:**


_____

Barbara Moses
United States Magistrate Judge


Dated: _____